UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
RUTH A. GROPPER,

                                  Plaintiff,

                 - against -

CONSECO SERVICE, LLC, an Indiana
limited liability company doing business
in the State of New York,
and
CIGNA CORPORATION, a Delaware corporation
doing business in the State of New York,

                                 Defendants.
-----------------------------------------------------------x

04 Civ. 5820 (CLB)

***Memorandum and Order***

Brieant, J**.**

      On July 27, 2004, Plaintiff Ruth A. Gropper filed her Complaint in this ERISA case, seeking a Declaration that she is entitled to disability benefits under the relevant employee disability benefit plan. The proper Defendant in this case is Life Insurance Company of North America ("LINA"), which issued the disability policy to Conseco. After a bench trial held on July 12, 2005, and after considering the administrative record and the parties' submissions, the Court makes the following findings of fact and conclusions of law by a preponderance of the credible evidence.

      Plaintiff is a fifty-five year old woman, who began working for Conseco in May, 1985 as a customer service representative serving life insurance policies. On January 27, 2001, Plaintiff was involved in an automobile accident on Route 303 in Congers, New York. Plaintiff was driving and was wearing a safety belt. The police report states that Plaintiff's vehicle was making a left turn from Highway Avenue onto Route 303, and a second vehicle failed to stop at a red

light and collided with Plaintiff's car.  *See Administrative Record ("AR") at 102*.  Plaintiff was examined that day at Nyack Hospital, and she complained of pain in her left knee and in the left side of her neck.  *AR at 105*.  She denied any loss of consciousness, headache, nausea, vomiting, or blurred vision.  *AR at 108*.  The hospital report listed her work status as "complete disability," but this status was applicable for only 48 hours.  *AR at 106*.  She was discharged in stable condition.  *AR at 110*.  She was out of work from January 29, 2001 until March 14, 2001.

Plaintiff's treating physician is Dr. Richard W. King.  He performed a follow-up examination on the Plaintiff on January 31, 2001, where she was given pain medication and referred to physical therapy.  Dr. King examined Plaintiff again on February 23, 2001, and she complained of headaches, neck pain and muscle spasms.  Follow-up examinations were performed in March, April, August, and October of 2001, and several times in January through August of 2002.  Dr. King's medical report indicates that Plaintiff's condition appeared to be improving in March 2001, but that it thereafter fluctuated, with her condition improving certain months, and deteriorating others.  *AR at 169*.  Throughout this time period, Plaintiff complained of continuing pain in her neck, and was seen in the emergency room on November 8, 2001 for pain in the back of her neck which radiated to her scalp.

On January 10, 2002, Dr. King declared Plaintiff totally disabled, and she stopped working the next day.  On May 16, 2002, Dr. King diagnosed Plaintiff with chronic neck strain, and on October 18, 2002, Dr. King gave his medical opinion that Plaintiff was completely disabled and would never return to work due to "chronic pain and the need for pain medication and muscle relaxants."  She has not returned to work.

On March 30, 2002, Plaintiff applied for disability benefits from Cigna. She described her condition as "severe muscle spasms in neck, burning constantly in back of head and pressure at base of neck (back of head and top of head). Tightness in face and eyes radiating upward from back of neck through ears, et al." *AR at 277*. She stated that she had basic earnings of $4,333.33 a month, and had received gross weekly payments of $866.66 for lost wages from her no fault insurance from January 11, 2002 through February 24, 2002, and $170.00 from New York State short term disability from January 18, 2002 through January 31, 2002. On April 7, 2002, Cigna acknowledged receipt of Plaintiff's request for benefits, requested additional information from Plaintiff's physicians, and stated that her eligibility for benefits would begin on April 10, 2002. *AR at 281*.

On May 29, 2002, Cigna denied Plaintiff's request for benefits on the ground that her medical condition did not satisfy the disability plan's definition of "disability" because she could perform her own occupation of Customer Service Manager. *AR at 216-17*. The Plaintiff appealed this decision administratively. During this appeal, an internal review of Plaintiff's medical history was performed by Dr. Joseph T. Doyle, who concluded that the medical evidence did not justify overturning the original determination. *AR at 210*. Plaintiff's appeal was denied by letter dated November 11, 2002. *AR at 204*.

By letter dated July 24, 2003, the Defendant agreed to review its original claim denial, *AR at 93*, and to conduct a peer review. Plaintiff submitted additional medical information. Defendant contracted with Intracorp to perform this review, which contracted with Disability Management Solutions.

On August 6, 2003, Dr. Barry Kern conducted his peer review of Plaintiff's medical records, but he did not examine the Plaintiff personally. He concluded that the medical documentation did not support Plaintiff's claim that she was unable to work in a sedentary position following January 11, 2002, and that the Plaintiff was fully capable of performing repetitive work activities such as typing at a computer for an eight hour workday with normal work breaks. *AR at 91-92*. He disagreed with Dr. King's medical findings of disability, and stated that:

> [Plaintiff's] continued complaints have resulted in her doctors indicating that she is completely disabled. In my opinion, the objective findings in the available medical records do not support this degree of limitation. There is no documentation presented that would indicate this claimant would be limited from performing her regular fulltime work activities at this time. The continued complaints of pain and inability to work are not substantiated by objective findings. Dr. King was adamant that this patient was disabled. The only findings were continued spasm and tenderness. He feels if the patient states that they have pain, they are disabled.

*AR at 65*. Dr. Kern concluded that Plaintiff had a soft tissue injury which should subside within three months. The Defendant reaffirmed its denial of benefits on August 13, 2003.

In *Firestone Tire and Rubber Co. et. al., v. Bruch,* 489 U.S. 101, 115 (1989), the Supreme Court held that "a denial of benefits challenged under § 1132(a)(1)(B) [of Title 29] is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Here, the Defendant concedes that the Court reviews Plaintiff's denial of benefits *de novo,* meaning that all aspects of the denial of the Plaintiff's ERISA claim, including factual contentions, will be reviewed *de novo*. *See Juliano v. Health Maintenance Organization of New Jersey, Inc.*, 221 F.3d 279, 287 (2nd Cir. 2000) (citing *Kinstler*, 181 F.3d at 245). The claimant in

a *de novo* review case will prevail if his or her interpretation of the plan is reasonable. *See Kasakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 738 (2nd Cir. 2001).

In reviewing an ERISA eligibility decision *de novo*, a court is limited to reviewing the administrative record absent good cause to consider additional evidence. *Connors v. Connecticut General Life Ins. Co.*, 272 F.3d 127, 135 (2nd Cir. 2001). There is no reason to believe that the administrative record in this case is insufficient. The Plaintiff's medical condition is well documented in the administrative record. There is no need for outside testimony of what is present in the administrative record.

> Under the Defendant's disability plan:
>
> The Employee is considered Disabled, if, solely because of Injury or Sickness, he or she is either:
>
> 1. Unable to perform all the material duties of his or her Regular Occupation or a Qualified Alterative; or
>
> 2. Unable to earn 80% or more of his or her Indexed Covered Earnings.
>
> After Disability Benefits have been payable for 36 months, the employee is considered disabled if, solely due to injury or sickness, he or she is either:
>
> 1. Unable to perform all the material duties of any occupation for which he or she is, or may reasonable become qualified based upon education, training or experience; or
>
> 2. Unable to earn 80% or more of his or her indexed covered earnings.

*AR at 16; 216*. Servi Jeganathan, a Vocational Rehabilitation Counselor, determined Plaintiff's employment position to be "Manager, Financial Institution." *AR at 258*. This position requires sedentary work with occasional lifting of up to ten pounds and prolonged periods of sitting,

frequent reaching, handling and fingering.[1]  This position does not require climbing, balancing, stooping, kneeling, crouching, crawling, feeling, tasting/smelling, depth perception, color vision or field of vision. *AR at 261*.

On April 17, 2002, Ms. Phyllis Bettino faxed Dr. King a physical ability assessment form for Plaintiff.  Dr. King returned it on May 16, 2002, and stated on the form that Plaintiff was capable of lifting and carrying up to ten pounds occasionally.[2]  She was capable of pushing and pulling the equivalent weight of a gallon of milk occasionally.  She could walk continuously.[3]  She could climb, balance, stoop and kneel frequently.[4]  She was unable to reach overhead, but could frequently reach items which were at desk level or below her waist, and was continuously capable of fine manipulation, simple and firm grasping, and could frequently use her legs and feet for foot controls. *AR at 223-24*.

On January 9, 2003, Dr. King prepared a "Functional Capacity" report for a determination of disability. *AR at 185*.  In his medical opinion, Plaintiff could occasionally lift less than ten pounds and sit less than six hours per workday.  He also stated that she had abnormal posture,

---

[1] Plaintiff's job was described by Conseco as 97% sitting, and 1% each for standing, walking and bending.

[2] Occasionally is defined by the physical ability assessment as "1-33%" of Plaintiff's time, or "<2.5 hrs" per work day.

[3] The form defines "continuously" as "67-100%" of Plaintiff's time, or "5.5+ hrs" per workday.

[4] The form defines "frequently" as "34-66%" of Plaintiff's time, or "2.5-5.5 hrs" per workday.

which limited her capacity for repetitive stooping and bending, remaining seated for long periods, crouching and squatting and climbing. Her ability to grasp, release, handle and finger objects was abnormal, her tolerance to dust, fumes and extreme temperatures was abnormal, and her ability to operate a motor vehicle was abnormal. *AR at 185*. As of December, 2002, Dr. King had found a decreased range of motion in Plaintiff's neck and shoulder region.

Plaintiff was also examined by Dr. Domenic Monaco, who prepared a report dated April 3, 2003. Dr. Monaco diagnosed Plaintiff with cervical strain, occipital neuralgia, trapezius/cervical muscle spasms and DDD C-spine. Dr. Monaco concluded that she was permanently disabled. *AR at 200*. However, he noted that the "degree of symptoms appear out of proportion to findings on physical exam & x-ray findings & consultation." *AR at 195*. He also found that Plaintiff's pain interfered with her ability to look at a computer screen and that while she could sit for six hours in an eight hour workday, it would not be medically recommended for her to sit continuously in a work setting. She was capable of occasionally lifting and carrying ten pounds, and he recommended that she not push, pull or bend. *AR at 198*.

Plaintiff claims that she has continued spasms and chronic pain in her neck, and that Defendant "choose [sic] to ignore the fact that Dr. King was adamant that the spasms that she was having were causing her an inability to work." *Pl.'s Trial Memo at 11*. Plaintiff argues further that Dr. Kern did not examine the Plaintiff personally, and chose to ignore objective findings of disability.

The Court is presented with a "he said, she said" battle of the experts regarding whose

analysis of the medical evidence of disability is more persuasive. While the Plaintiff's continued complaints about pain in her neck and shoulders may not establish her disability conclusively, it is certainly relevant evidence of disability, and this Court may not, as a matter of law, dismiss such complaints as legally insufficient proof of disability. *See Connors, 272 F.3d at 136*. Plaintiff's complaints, if credited by this Court, are legally sufficient to support her claims of disability. *See Marcus v. Califano*, 615 F.2d 23, 27 (2nd Cir. 1979) ("The subjective evidence of [Plaintiff's] pain, based on her own testimony and medical reports of examining physicians, is more than ample to establish her disability, if believed.").

After considering the entire administrative record, the Court concludes that Plaintiff was disabled, as defined by the Defendant's plan, at the time that her claim for benefits was denied. Under the employee disability plan, the Plaintiff is disabled if she cannot perform the material duties of her regular job. Plaintiff's job consists almost exclusively of sitting. Dr. King's physical ability assessment, *see AR at 224*, states that Plaintiff can only sit occasionally, meaning for up to 2.5 hours per workday. Dr. Monaco's opinion supports this assessment. If this assessment is true, and no reason exists to doubt its accuracy, Plaintiff is unable to perform her usual employment, which the Defendant states involves 97% sitting. Sitting 97% of an 8 hour workday constitutes a continuous activity under the physical ability assessment, and would clearly require more than 2.5 hours of sitting. No evidence has been presented that the Plaintiff is capable of sitting continuously. Indeed, Defendant does not argue that she can sit continuously. *See Def.'s Memo at 10* ("In fact the Physical Ability Assessment form of Gropper's treating physician shows that she is able to perform all of the material duties of her own occupation. She is capable of sitting and standing on an occasional basis."); *see also AR at 302* (stating that Plaintiff's job consisted of 97%

sitting, and 1% each standing, walking and bending). The Plaintiff has presented sufficient evidence that her interpretation of the disability plan is reasonable, and that her physical condition satisfies the plan's definition of "disability."

Plaintiff's disability benefits must be reduced by the amount of "other benefits" received. *AR at 27*. Under the plan, the Defendant "will assume that the Employee. . .[is] receiving benefits for which they are eligible from other Income Benefits. The Insurance Company will reduce the Employee's Disability Benefits by the amount from Other Income Benefits it estimates are payable to the Employee and his or her dependents." *AR at 28*. Upon the current administrative record, the Court is unable to determine the exact amount of Plaintiff's other sources of income.

The Court's decision today applies only to Plaintiff's eligibility during the initial 36 month phase of the disability plan. After thirty six months have elapsed, the Plaintiff is required to resubmit her claim to determine whether she is eligible to receive disability benefits under the post-36 month "any occupation" standard contained within the plan. *See Peterson v. Continental Casualty Comp.,* 282 F.3d 112, 118 (2nd Cir. 2002) ("Absent a decision by the plan administrator, district courts have no jurisdiction to make an assessment of a beneficiary's eligibility for benefits."). Because the Defendant has not yet determined whether Plaintiff is eligible for benefits under the post-36 month phase of the plan, no case or controversy yet exists.

The Court concludes that the Plaintiff was disabled within the meaning of the plan and is entitled to disability benefits running from April 10, 2002, her benefits start date, until April 10, 2005. She must reapply to Defendant to determine her eligibility for benefits in the post 36 month

phase of the plan.  If the Defendant rejects her claim for extended benefits, which it assuredly will, she may assert her rights under ERISA in a new lawsuit.

**Conclusion**

Settle a final Judgment on 10 days notice or waiver of notice.  The parties may stipulate as to the amount of "Other Benefits" received by Plaintiff.  If the parties are unable to stipulate as to that amount, they shall submit documentary proof of the amounts received by Plaintiff and, if necessary, the Court shall appoint a Special Master to hear and determine the amount of Plaintiff's disability benefits offset by these "Other Benefits."  Also, the Plaintiff shall move, on 10 days notice or waiver of notice, for attorneys' fees and costs, and shall submit her *Lodestar* information for calculation of a reasonable attorney's fee.

SO ORDERED.

Dated: White Plains, New York
August 18, 2005

_____
Charles L. Brieant, U.S.D.J.

SO ORDERED.

Dated: White Plains, New York
August 18, 2005

                                                */s/ Charles Brieant*
                                            Charles L. Brieant, U.S.D.J.